J. C. BEATTY, Appellee, v. S. W. TAYLOR et al., Appellants.

**BOUNDARIES:** Acquiescence Bars Literal Language of Deeds. 1 After parties have, for 20 years, acquiesced in a boundary line, neither will be permitted to insist on the literal application of the language of deeds, when such application would remove such line and effect a result never contemplated by the parties.

**ADVERSE POSSESSION:** Boundary Line—Acquiescence. Title by 2 adverse possession commences to ripen in favor of adjoining property owners as to their respective tracts from the time they mutually agree on and acquiesce in a definitely marked boundary line, even though they were mutually mistaken as to the location of the true line.

*Appeal from Ringgold District Court.*—H. A. FULLER, Judge.

NOVEMBER 11, 1919.

ON February 25, 1918, the plaintiff, claiming to be the owner in fee simple of the northeast quarter of the northwest quarter and the south half of the northwest quarter of Section 35, Township 70, Range 31, in Ringgold County,

sold and conveyed the same to J. R. Taylor; but, it appearing that the defendant S. W. Taylor made adverse claim to a portion of the described premises, the said grantee, J. R. Taylor, withheld from plaintiff a part of the purchase money until the dispute so arising should be settled. Thereupon, plaintiff brought this suit in equity to establish, confirm, and quiet in his said grantee the fee title to all the land described in said conveyance.

In answer to the plaintiff's petition, the defendant S. W. Taylor alleges fee title in himself to 4½ acres of the land described in the petition, and traces such title from John Beatty, father and grantor of plaintiff, by deed dated January 15, 1889, made to one Simpson, who, in turn, conveyed it to the defendant S. W. Taylor, by deed dated July 28, 1892.

It is conceded that, on the date of the deed to Simpson, John Beatty was the owner of all of the northwest quarter of the section, and that plaintiff's title was acquired through his father, in the year 1904. To avoid the effect of the conveyance to the defendant, the plaintiff alleges and offers evidence to prove that, prior to the making of these deeds, his father, John Beatty, was the owner of all of the northwest quarter of Section 35, and, at the same time, one Simpson was the owner of the 40-acre tract immediately south of Beatty's southeast 40, and one Thrift was the owner of the land immediately south of Beatty's southwest 40. A partition fence was constructed on what was supposed to be the true line between Beatty on the north, and Simpson and Thrift on the south. It is plaintiff's further contention that, the location of this line being such as to divide the land in the west half of the section quite unequally, said parties undertook to correct the inequality in acreage by proper conveyances, thus securing to each the full amount of land which would have been his, had the original survey been correctly made. To that end, it is alleged that

Beatty, owning the land on the north, where a supposed excess of 9 acres existed, conveyed 4 acres to Simpson and 5 acres to Thrift, to fill out their tracts, which were supposed to be deficient to that extent. In so doing, according to plaintiff's claim, the parties, proceeding on the theory that the division line which had been observed up to that time was the true line, described the strip conveyed to Simpson as beginning at the southwest corner of the east half of the northwest quarter of Section 35–70–31; thence north 10 rods; thence east to east line of the quarter section; thence south 6¾ rods; thence westerly to place of beginning.

Plaintiff further alleges that, upon the execution of this deed, Beatty withdrew his fence to the north line of the 4-acre tract; and that, since then, said Beatty and his grantee, the present plaintiff, have maintained exclusive and adverse possession of all the land bordering said strip on the north; and that no part of the land so held and claimed by him and conveyed to J. R. Taylor was, in fact, conveyed or intended to be conveyed to Simpson, who is the defendant's grantor.

On trial of the issues thus joined, the district court found for the plaintiff, and entered a decree for the relief demanded. The defendants appeal.—*Affirmed.*

*V. R. McGinnis,* for appellants.

*Spence & Beard,* for appellee.

WEAVER, J.—The trial court found, and the record sustains the finding, beyond any fair doubt, that, at the time the conveyances were made by John Beatty to Simpson and

1. BOUNDARIES: acquiescence bars literal language of deeds.

Thrift, these parties all mistakenly believed that the line which was then being observed by them, between Beatty on the north and his grantees on the south, was the true line, according to the original survey; and that,

by reason of such location, the Beatty land overran the ordinary government measure by 9 acres, while the lands of Simpson and Thrift were deficient to that extent. To correct that inequality, Beatty undertook to sell and convey to Simpson a strip of 4 acres from the south side of the southeast quarter of the northwest quarter of the section, and to Thrift, a strip of 5 acres from the south side of the southwest quarter of the northwest quarter. This excess, if any there was, in the acreage of the Beatty land, was, of course, north of the division line; and, in conveying it to the adjoining owners on the south, the parties described its boundaries by taking as the place of beginning a point on the assumed true line, and measured north to a new east and west line drawn at a sufficient distance from the assumed line to give to Simpson his 4 acres and to Thrift his 5 acres. The conveyances having been made, Beatty withdrew his fences, possession, and claim of right to the new line thus established, and his grantees advanced their possession northward to that line. A partition fence was here erected, and, until this dispute arose, more than 20 years later, it has been maintained and mutually recognized on both sides.

The origin of the present dispute is found in the fact that it is now apparent, or, at least, the evidence tends to show, that the location of the true line, according to the original survey, is not where the senior Beatty, Thrift, and Simpson supposed it was, but is, in fact, coincident with the line which these parties undertook to establish by the conveyances to which we have referred. If this be true, and, upon the record as made, it may be so assumed, to equalize the acreage of the holdings of the respective parties, the grantees acquired nothing by their deeds from Beatty, except it be a relinquishment of his claim of right to the strip of land which all the parties in good faith supposed to be included within the Beatty quarter section.

Falling back upon the literal wording of the deed to Simpson, which describes the land conveyed as measured north from a place of beginning on the south line of the Beatty quarter, the appellant S. W. Taylor, who is the grantee of Simpson, now insists that the strip shall be measured north from the newly discovered or re-established true line, with the result that the excess acreage which was supposed to exist on the Beatty side of the line, and to correct which the deed was made, shall be transferred to him, and leave the Beatty land short by that amount.

If appellant's case were to stand or fall solely upon the literal construction of Beatty's deed to Simpson, his position would be impregnable; but the question before us is not of this simple character. The evidence makes it clear that the actual subject-matter of the deal between Beatty on the one hand and Simpson and Thrift on the other was a definite strip of land, lying north of and abutting upon what they supposed to be the true line between them. That land they undertook to describe by reference to that line as a starting point. There was no misunderstanding as to the identity or location of the land itself, which Beatty was undertaking to convey, and confusion has since arisen from the simple fact that, if the starting point named in the deed were to be taken as referring to what is now recognized as the true line, it would make the deed effect the conveyance of a tract of land not then contemplated by either party. It is upon this construction of the deed that appellant grounds his claim of title. To so hold would be inequitable, and to sustain a claim wholly out of harmony with the conduct of all the parties during a long series of years.

It may be, and doubtless is, true that, as it now appears, Thrift and Simpson paid Beatty for the conveyance of land which they already owned; but this seems to have been the result of a mutual mistake as to the location of

the true boundary line between them, and not to have been influenced or brought about by undue advantage or fraud. It may be assumed, for the purposes of this case, that the said grantees acquired a right of action against Beatty for a return of the consideration paid by them, and it may also be assumed that, when the establishment of the true line had the apparent effect to make his deed to Simpson applicable to another tract of land than was contemplated by the parties, plaintiff might have maintained a suit in equity to correct the description and make it accord with the intent of the parties; but, under all the circumstances, such relief is not now required.

As we have already pointed out, the parties, grantor and grantees, proceeded at once, on the making of these deeds, to put their own practical construction upon them, by recognizing as the land conveyed the strip lying immediately north of the supposed line, and erecting a partition fence along the north side of such strip. That boundary line has been recognized and acquiesced in by all the parties in interest for more than 20 years. It is too late now for the appellant to say he did not understand the true situation. He bought his land in 1892, three years after the deed to Simpson from Beatty, and took a conveyance from Simpson, including the described 4-acre tract. During practically all the time since that date, he has lived upon the land so purchased, and says that, until about the time this suit was brought, he always supposed the 4-acre tract was on his side of the line fence between him and Beatty; and, although he had owned the land about 30 years, and knew that Beatty was occupying and farming all the land north of the fence, he never raised any objection or made any adverse claim to any part of the land on that side. As a witness, he testifies, concerning his purchase of the farm and the 4-acre tract:

"I didn't think I was buying any north of the fence. I

never claimed anything north of the fence at any time until last spring."

We think it unnecessary to pursue the discussion of the evidence any further. Appellant's own showing conclusively estops him from denying the effect of his acquiescence in the line which has been so long

**2. ADVERSE POS-SESSION:**
**boundary line: acquiescence.**

maintained by the parties. Moreover, we are of the opinion that plaintiff's title has, in any event, become indisputable by adverse possession. While the parties may have been, and doubtless were, mistaken in the belief that the original line of their holdings was the true line, they, by mutual agreement and by conveyance, established a line to which they have claimed title and held possession for much more than 10 years. Although there was a mistake as to the true line, there was no mistake as to the line agreed upon, and possession by each under such agreement was adverse to the other party thereto.

The decree below is right, and it is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.